# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ERIC LAMAR WOODLEY,

     Petitioner,                   Civil Case No. 13-11190
                                       Criminal Case No. 04-80335

v.                                  Hon. Gerald E. Rosen

UNITED STATES OF AMERICA,

     Respondent.

_____/

## OPINION AND ORDER GRANTING
## RESPONDENT'S MOTION TO DISMISS PETITIONER'S
## MOTION UNDER 28 U.S.C. § 2255 TO VACATE HIS SENTENCE

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on        September 8, 2016       

PRESENT:    Honorable Gerald E. Rosen
                    United States District Judge

## I. INTRODUCTION

By judgment entered on July 27, 2006, Petitioner Eric Lamar Woodley was

sentenced to a 171-month term of imprisonment, following his plea of guilty to

charges of conspiracy to distribute over 1,000 kilograms of marijuana, attempted

possession with intent to distribute less than 100 kilograms of marijuana, aiding

and abetting in the attempted possession with intent to distribute more than 100

kilograms of marijuana, and conspiracy to launder monetary instruments.[1]
Petitioner did not appeal from this judgment of conviction.

Through the present *pro se* motion brought under 28 U.S.C. § 2255,
Petitioner challenges his conviction and sentence on a variety of grounds.  In lieu
of responding to the substance of the issues raised by Petitioner, the Government
seeks the dismissal of Petitioner's motion, arguing that this motion was filed well
beyond the one-year period of limitation for seeking relief under § 2255.  As
discussed below, the Court agrees with the Government that Petitioner's motion
must be dismissed as untimely filed.

## II.  PROCEDURAL BACKGROUND

At a plea hearing held on February 17, 2006, Petitioner Eric Lamar
Woodley pled guilty to each of the four offenses with which he was charged in a
July 27, 2004 first superseding indictment.[2]  At the conclusion of a July 25, 2006
sentencing hearing, Petitioner was sentenced to a 171-month term of
imprisonment, followed by a five-year period of supervised release.  Petitioner did
not pursue a direct appeal of his conviction and sentence; to the contrary, he and

---

[1]At the time of Petitioner's plea and sentencing, District Judge Victoria A. Roberts
presided over this case.  By order dated April 17, 2013, the case was reassigned to the
undersigned District Judge.

[2]There was no Rule 11 agreement reflecting the terms of Petitioner's guilty plea.

2

his counsel signed a stipulation to waive Petitioner's right to appeal his conviction or sentence in the event that his sentence did not exceed 171 months.  (*See* DE 218, 7/25/2006 Stipulation; *see also* 7/25/2006 Sentencing Hearing Tr. at 5 (statement by Petitioner's counsel acknowledging that "[w]e agree and we have signed the form waiving our appellate rights").)

Petitioner's report date for serving his sentence initially was set for September 6, 2006, but this report date was extended to October 1, 2006 through a September 1, 2006 stipulated order.  In addition, the court entered a September 11, 2006 order eliminating electronic monitoring as a condition of Petitioner's bond.

Petitioner failed to surrender himself on his October 1, 2006 report date, and the Government states that his "whereabouts remained unknown until he was arrested at a dogfight in Detroit roughly a year later."  (Government's Motion to Dismiss, Br. in Support at 3.)  The Government further states that before Petitioner could be turned over to the federal authorities, he escaped from custody by assuming the identity of another inmate and arranging for his girlfriend to post bond in the name of that inmate.  (*See id.*)[3]

In April of 2008, Petitioner was located and arrested in Phoenix, Arizona.

---

[3]Petitioner disputes the Government's account of this episode, but this dispute is immaterial to the resolution of any issues addressed in this opinion and order.

3

He was placed in the custody of the Bureau of Prisons to begin serving his 2006 sentence, and also was charged in a May 26, 2011 indictment with failure to surrender for service of a federal sentence.  Petitioner pled guilty to this charge, and was sentenced on July 30, 2012 to a 13-month term of imprisonment, to be served consecutively to the 171-month sentence imposed in the present case.

Through the present *pro se* motion filed on March 18, 2013 — over six and a half years after his July 25, 2006 sentencing in this case — Petitioner seeks to challenge his conviction and sentence under 28 U.S.C. § 2255.  Specifically, Petitioner asserts (i) that his counsel provided constitutionally deficient representation at his July 25, 2006 sentencing hearing, (ii) that the court imposed a five-level increase to his offense level under the U.S. Sentencing Guidelines without his knowledge or consent, (iii) that his sentence is both procedurally and substantively unreasonable in various respects, and (iv) that his guilty plea was not knowingly made.  In lieu of responding to these challenges on the merits, the Government requests that Petitioner's motion be dismissed as untimely filed well beyond the one-year period for pursuing a collateral challenge to a conviction or sentence under § 2255.

### III.  ANALYSIS

Under the plain language of the statute itself, a motion under 28 U.S.C. §

4

2255 challenging the lawfulness of a conviction or sentence ordinarily must be filed within one year of "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). In this case, Petitioner did not pursue a direct appeal of his conviction or sentence, so his judgment of conviction became final in early September of 2006, upon the expiration of the ten-day period for filing a notice of appeal. *See Sanchez-Castellano v. United States,* 358 F.3d 424, 428 (6th Cir. 2004).[4] Plainly, then, Petitioner's present motion was not timely filed within the presumptive one-year period set forth in § 2255, but instead was filed over five and a half years after the expiration of this deadline.

Petitioner proposes two means of avoiding this time bar. First, he appeals to a provision in § 2255 that permits the filing of a motion within a year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). Next, he contends that the usual one-year statutory deadline should be subject to equitable tolling. As discussed below, the Court finds neither of these arguments persuasive under the record presented here.

---

[4]Following a 2009 amendment, Fed. R. App. P. 4(b)(1)(A) now allows for a 14-day period for appealing a judgment of conviction in a criminal case. The version of this rule that was in effect at the time of Petitioner's sentencing, however, required that a notice of appeal be filed within ten days after the entry of judgment.

**A.     Petitioner Has Failed to Show That the Present Motion Was Filed Within a Year of the Date on Which the Facts Supporting His Claims Could Have Been Discovered Through the Exercise of Due Diligence.**

Although, as noted, the one-year period of limitation for bringing a § 2255 motion ordinarily begins to run on "the date on which the judgment of conviction becomes final," 28 U.S.C. § 2255(f)(1), the statute provides a separate one-year window of opportunity for pursuing claims arising from newly-discovered evidence. Specifically, a prisoner's § 2255 motion is timely so long as it is filed within a year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). In deciding whether this provision applies, a court must "determine when a duly diligent person in [the prisoner's] circumstances would have discovered" the facts giving rise to his claim for relief. *DiCenzi v. Rose,* 452 F.3d 465, 470 (6th Cir. 2006) (internal quotation marks and citation omitted). This provision, by its express terms, "does not require the maximum feasible diligence, only 'due,' or reasonable, diligence." *DiCenzi,* 452 F.3d at 470 (internal quotation marks and citations omitted). Petitioner "bears the burden of proving that he exercised due diligence" in discovering the factual predicate for his claims. 452 F.3d at 471.

As to three of his four claims, Petitioner flatly admits in his motion and

6

supporting materials that he was aware of the facts underlying these claims back in
2008, over four years before he filed his present motion.  Specifically, in
paragraph 13 of his motion, Petitioner expressly states that he "inform[ed] the
court" in a November 18, 2008 submission of the issues surrounding the first,
third, and fourth claims asserted in his motion — *i.e.,* his claims of ineffective
assistance of counsel, that his sentence is procedurally and substantively
unreasonable, and that his guilty plea was not knowingly made.  (Petitioner's §
2255 Motion at ¶ 13.)  Petitioner's acknowledgment that he was aware of the
grounds for these three claims is confirmed by his 2008 letter to the court, in
which he stated, among other things, (i) that he was "very stupid and very naive"
at the time of his sentencing and "wouldn[']t ever bel[ie]ve" that his sentencing
counsel, Steven Fishman, "would intentionally get me more time th[a]n I should
have rightfully got," (ii) that his sentencing guidelines were incorrectly calculated
to produce an increased sentencing range of 135-168 months, but that his counsel
nonetheless advised him to "agree to more time th[a]n my guideline max[imum],"
(iii) that he was "tricked" into pleading guilty and signing a waiver of his right to
appeal as a result of his counsel's misrepresentations, (iv) that he was unaware of
what he had pled guilty and otherwise agreed to until he received a recent letter
from his counsel and a "sentence computation," copies of which he enclosed with

his letter to the court, and (v) that he "honestly had nothing to do with" one of the offenses to which he pled guilty and his counsel "could have very well proved it," but that his counsel instead "lie[d]" and "told me I wasn[']t pleading guilty to the stuff that wasn[']t true[,] only the true stuff."  (Petitioner's 8/19/2013 Reply, Ex. N, 11/18/2008 Letter at 2, 4, 7, 9-10, 11.)

To be sure, Petitioner states in his motion that he was "not aware of how to properly raise the grounds" identified in the first, third, and fourth claims of his § 2255 petition.  (Petitioner's § 2255 Motion at ¶ 13.)  Be that as it may, the law is clear that the one-year period of limitation granted under § 2255(f)(4) "begins when the prisoner knows (or through diligence could discover) the important facts" supporting his claim, and "not when the prisoner recognizes the[] legal significance" of these facts.  *Owens v. Boyd,* 235 F.3d 356, 359 (7th Cir. 2000); *see also United States v. Pollard,* 416 F.3d 48, 55 (D.C. Cir. 2005); *Redmond v. Jackson,* 295 F. Supp.2d 767, 771 (E.D. Mich. 2003).  Similarly, both the Sixth Circuit and this Court have recognized that an inmate's *pro se* status and lack of legal sophistication do not excuse a delay in the inmate's pursuit of a collateral challenge to his conviction and sentence.  *See Hall v. Warden, Lebanon Correctional Institution,* 662 F.3d 745, 751 (6th Cir. 2011); *Rodriguez v. Elo,* 195 F. Supp.2d 934, 936 (E.D. Mich. 2002); *Wilson v. Birkett,* 192 F. Supp.2d 763,

8

766 (E.D. Mich. 2002).  As the Supreme Court has emphasized, "we have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness." *Johnson v. United States,* 544 U.S. 295, 311, 125 S. Ct. 1571, 1582 (2005).  Accordingly, because Petitioner, by his own admission, failed to assert three of his four claims within a year after he was aware of the facts supporting these claims, § 2255(f)(4) does not assist him in establishing that these claims were timely filed.[5]

This leaves only Petitioner's claim that at his July 25, 2006 sentencing hearing, his offense level and resulting sentencing range under the U.S. Sentencing Guidelines were improperly increased through the application of an enhancement that purportedly had no factual or legal basis — namely, a three-

---

[5]Notably, while Petitioner's *pro se* status provides no legal justification for his delay in filing the present motion, he has acknowledged that he did, in fact, seek legal advice shortly after his sentencing.  In an affidavit accompanying his reply in support of his § 2255 motion, Petitioner states that he was "informed" in August of 2006 "that his counsel (Mr. Fishman) intentionally had [him] unjustly sentenced," and that he "consulted with two different attorneys" in September of 2006 and "found out that more than likely something was wrong" with his sentencing.  (Petitioner's 8/19/2013 Reply, Ex. O, Aff. at 1.)  Following these consultations, he advised his sentencing counsel, Mr. Fishman, that "he ha[d] talked with two different lawyers and . . . learned that a 171 month[] [sentence] [wa]s not a good or reasonable sentence."  (*Id.* at 3.)  Petitioner states that these two attorneys "were willing to help [him] for money," but that he could not afford to hire them.  (*Id.* at 1-2.)  Nothing in the record indicates that Petitioner sought the assistance of the court in securing substitute counsel to either (i) file an appeal on his behalf challenging his guilty plea and sentence, or (ii) assist him in preparing a § 2255 motion challenging his conviction and sentence.

level enhancement under § 3B1.1(b) of the Sentencing Guidelines for Petitioner's role in the money laundering offense charged in count six of the first superseding indictment. Petitioner contends that he first discovered the factual basis for this claim in June or July of 2012, when his attorney in his 2011 failure-to-report case provided him with a copy of the transcript of his 2006 sentencing hearing and he realized, upon reviewing this transcript, precisely which enhancement the court had applied in computing his sentencing range and imposing a 171-month sentence.

On two separate grounds, the Court rejects Petitioner's contention that he "discovered" the facts supporting his sentencing challenge in mid-2012, such that his § 2255 motion was timely filed within a year of this discovery. First, Petitioner's claim of newly-discovered facts rests upon an overly narrow and unduly specific characterization of the sentencing challenge he seeks to pursue. When Petitioner wrote to the court in November of 2008, he stated that he was in possession of a "sentence computation from where I[']m at right now," and he complained (i) that his sentencing range was the product of an incorrect application of the Sentencing Guidelines, and (ii) that some of his fellow inmates had received lesser sentences despite "worse records than me and . . . real true 3+ point [e]nhancements on their case." (Petitioner's 8/19/2013 Reply, Ex. N,

10

11/18/2008 Letter at 4, 10, 12.)  Similarly, in a reply brief in support of his § 2255

motion, Petitioner states that he has been aware at all times since his July 25, 2006

sentencing hearing that "something was seriously wrong with his sentence and

sentencing," but he insists that he did not "understand exactly what it was that was

wrong" due to his "ignoran[ce] of the law."  (Petitioner's 8/19/2013 Reply Br. at

16.)

     As the case law makes clear, Petitioner's admitted notice and awareness of

alleged defects in the computation of his offense level and resulting sentencing

range under the Sentencing Guidelines were sufficient to trigger the one-year

statute of limitations for seeking relief under § 2255.  The Sixth Circuit has

explained, for instance, that newly discovered information "that merely supports

or strengthens a claim that could have been properly stated without the discovery"

does not give rise to a renewed one-year period for collaterally challenging a

conviction or sentence.  *Jefferson v. United States,* 730 F.3d 537, 547 (6th Cir.

2013) (internal quotation marks and citations omitted).  Likewise, the Fifth Circuit

has observed that there is no "statutory right to an extended delay . . . while a

habeas petitioner gathers every possible scrap of evidence that might . . . support

his claim."  *Flanagan v. Johnson,* 154 F.3d 196, 199 (5th Cir. 1998).  And the

Second Circuit has made a similar point, observing that "it should go without

11

saying" that the factual predicate that triggers § 2255(f)(4)'s one-year period of limitation "must consist of *facts,*" and that "[c]onclusions drawn from preexisting facts, even if the conclusions are themselves new, are not factual predicates for a claim." *Rivas v. Fischer,* 687 F.3d 514, 535 (2d Cir. 2012) (emphasis in original).

These principles defeat Petitioner's appeal to § 2255(f)(4) as a basis for concluding that his sentencing challenge was timely brought. Petitioner concedes that he has long believed, essentially since the conclusion of his July 25, 2006 sentencing hearing, that the sentencing court misapplied the Sentencing Guidelines in arriving at his offense level and sentencing range, and that his resulting 171-month sentence could not be justified through a proper application of the Guidelines to the factual record before the court. To be sure, Petitioner explains that he was "completely ignorant of the law" at the time, (Petitioner's 8/19/2013 Reply Br. at 16), and that it was only in June or July of 2012 that he — with the assistance of his counsel in the failure-to-report case — reviewed the transcript of the July 25, 2006 sentencing hearing and understood precisely how the sentencing court had arrived at the offense level and sentencing range that produced Petitioner's allegedly unlawful sentence. Prior to this discovery, Petitioner claims that he was operating under different theories and beliefs as to the derivation of his sentence — *e.g.,* that "he was unjustly over sentenced due to

12

his criminal history being miscalculated" and an excessive quantity of drugs being attributed to him under the charged marijuana conspiracy offense. (*Id.* at 16 & n.9.)

As explained, Petitioner's delayed realization of the precise manner in which the sentencing court allegedly misapplied the Sentencing Guidelines in determining his sentence does not qualify as a discovery of new "facts" that would warrant a renewed one-year filing period under § 2255(f)(4). While the transcript of the July 25, 2006 sentencing hearing certainly serves as evidence of Petitioner's present theory as to how the Sentencing Guidelines were misapplied, he had already formed a belief in November of 2008, and perhaps even earlier, that the sentencing range used to determine his sentence had been improperly increased, and that his sentencing counsel had induced him through misrepresentations to (i) accept a sentence that was apparently beyond even this increased range, (ii) forgo an evidentiary hearing to challenge the Government's claim of the drug quantity for which he should be held responsible, and (iii) sign a waiver of his right to appeal. (*See* Petitioner's 8/19/2013 Reply, Ex. N, 11/18/2008 Letter at 2, 4, 7, 9-10.)[6]  Under this record, the Court is satisfied that Petitioner was on sufficient

---

[6]Petitioner appears to claim in his present submissions that until he reviewed the transcript of his sentencing hearing, he had been laboring under the assumption that the increased offense level used to determine his sentencing range was largely attributable to

notice by 2008 of the facts supporting his claim that his sentence was the unlawful product of an improper application of the Sentencing Guidelines.

Indeed, the courts have been particularly skeptical of claims that transcripts of court proceedings are needed in order to pursue a collateral challenge to a conviction or sentence. In *Hall*, 662 F.3d at 751, the Sixth Circuit observed that the inmate in that case "clearly knew what took place at his trial and what his grounds for relief were," and thus concluded that his lack of access to the transcript of his state court trial did not excuse the untimely filing of his habeas petition. Similarly, in *Pollard*, 416 F.3d at 54, the court explained that "[i]t could not have escaped [the defendant's] notice during the sentencing proceedings, at which he was present," that his counsel had pursued a course of action that the defendant sought to challenge in a § 2255 motion filed outside the ordinary one-year limitation period. More generally, this Court has previously cited a number of cases as "uniformly conclud[ing] that the lack of transcripts" does not trigger

_____

an incorrect calculation of his criminal history. Yet, in his November 2008 letter to the court, he expressed an apparent awareness that he also faced a three-level enhancement for his role in one or more of the offenses to which he pled guilty. (*See id.* at 8, 9, 12.) Once again, then, although Petitioner states that it was only upon reviewing the sentencing transcript that he learned precisely ***how*** this three-level enhancement was applied — *i.e.,* to his money laundering rather than drug conspiracy offense — he evidently was aware far earlier that this enhancement was (or at least might have been) incorporated into the offense level and sentencing range used to determine his sentence.

14

the additional one-year filing period for claims arising from newly discovered facts, so long as "the petitioner should [have] know[n] of the underlying claims which the evidence will allegedly support." *Eggleston v. Woods,* No. 11-11327, 2012 WL 831494, at *6 (E.D. Mich. Feb. 15, 2012) (collecting cases), *report and recommendation adopted,* 2012 WL 831486 (E.D. Mich. March 12, 2012).

Likewise, Petitioner here was present at his July 25, 2006 sentencing hearing, and therefore is properly charged with notice of what transpired at this proceeding. In particular, the sentencing court expressly stated (i) that counsel for the parties had agreed to amend paragraph 36 of the presentence report, which addressed Petitioner's role in the charged conspiracy to launder monetary instruments, to include "a three-point upward adjustment for his role in that offense," (ii) that in light of this enhancement, Petitioner had an "adjusted Offense Level of 37" which, when reduced by three levels for his acceptance of responsibility, resulted in an "applicable Offense Level [of] 34," (iii) that the parties had further agreed to amend the presentence report to reflect "a Criminal History category of [I]," rather than II as stated in the presentence report, and (iv) that following these revisions, "the applicable Guideline range that the Court must take into consideration [is] 151 to 188 months." (7/25/2006 Sentencing Hearing Tr. at 2-3.) Petitioner's counsel then confirmed the accuracy of these changes, and

15

Petitioner himself agreed that he had an opportunity to review the presentence report with his counsel, and that apart from the amendments announced by the court, he did not seek any further changes to the presentence report. (*Id.* at 3.) Next, Petitioner's counsel stated that Petitioner had elected to forgo an evidentiary hearing, given the belief of counsel and Petitioner himself that "had we gone forward with the [evidentiary] hearing, the best we could have hoped for . . . would have been the Guideline range that we have now," and that "had it gone bad for us, his Guideline range could have been 210 to 262 which is significantly higher than the range that he has now." (*Id.* at 4.)  Petitioner himself then expressed his understanding that he could have proceeded with an evidentiary hearing, but he agreed, upon inquiry by both his counsel and the court, that it was in his best interest not to do so. (*Id.* at 4-5.)  Finally, the sentencing court invited Petitioner to "put anything on the record" if he wished, but he declined to do so, stating that "I just want to accept my responsibility." (*Id.* at 6.)  In view of this record, as well as the facts of which Petitioner was aware when he wrote to the sentencing court in November of 2008, the Court finds that Petitioner's challenge to the sentencing court's application of the Sentencing Guidelines, like the remaining claims asserted in Petitioner's present motion, cannot be saved from § 2255's statute of limitations through an appeal to newly discovered facts.

16

Alternatively, even if it could be said that Petitioner did not learn the facts underlying this sentencing challenge until he reviewed the transcript of his sentencing hearing in June or July of 2012, this discovery would not trigger a renewed one-year opportunity to pursue this challenge if Petitioner could have learned these facts earlier "through the exercise of due diligence."  28 U.S.C. § 2255(f)(4).  As noted earlier, this one-year period begins to run "when a duly diligent person in [P]etitioner's circumstances would have discovered" the facts giving rise to his claim for relief, and it is Petitioner's burden to "prov[e] that he exercised due diligence."  *DiCenzi,* 452 F.3d at 470-71 (internal quotation marks and citation omitted).

Petitioner's task of satisfying this burden is made considerably more difficult by the fact that he failed to surrender on his scheduled October 1, 2006 report date, and instead began serving his sentence in April of 2008, over a year and a half later, when he was located and arrested in Phoenix, Arizona and placed in the custody of the Bureau of Prisons.  By the time of Petitioner's apprehension, well over a year had passed since his judgment of conviction became final in September of 2006, and the usual one-year period for seeking relief under § 2255 had already expired.  Accordingly, Petitioner's required showing of due diligence under § 2255(f)(4) hinges on his ability to demonstrate that his fugitive status did

17

not impair his ability to uncover the facts giving rise to his sentencing challenge.

Unsurprisingly, Petitioner cannot make this showing. Petitioner insists that he actively attempted to pursue his rights between his sentencing in July of 2006 and his arrest in April of 2008, with these efforts consisting of (i) being informed by "someone" in August of 2006 that his counsel "intentionally had [him] unjustly sentenced," (ii) consulting with two or three other attorneys, which led Petitioner to believe that "more than likely something was wrong" and to "learn[] that a 171 month[] [sentence] [wa]s not a good or reasonable sentence," (iii) asking his sentencing counsel, Mr. Fishman, for a copy of his presentence report and "other case information," which counsel allegedly refused to provide, (iv) gathering evidence bearing upon his criminal history and other factors used in calculating his sentencing range under the Guidelines, and (v) asking his mother to visit the court and retrieve documents from his court file. (Petitioner's 8/19/2013 Reply, Ex. O, Aff. at 1-5.) Yet, even accepting that this handful of information-gathering measures over an 18-month period qualifies as due diligence, the Court already has explained that Petitioner had learned sufficient facts by the end of this period, if not earlier, to assert most or all of the claims advanced in his present motion, but he nonetheless did not file this motion until nearly five years later.

Indeed, the only relevant materials that Petitioner evidently had not obtained

18

by the time he wrote his November 2008 letter to the court were a copy of his
presentence report and the transcript of his sentencing hearing.  According to
Petitioner, he sent letters to his counsel in 2007 and 2008 requesting these
materials, but his attorney allegedly refused to provide them, and his mother
likewise was unable to obtain copies of these materials from the District Court
clerk's office.  (*See id.* at 4-6.)  Yet, when Petitioner wrote his lengthy 12-page
letter to the sentencing court in November of 2008, he did not request the court's
assistance in getting copies of these materials, whether from his counsel or the
court's records, but instead merely (i) expressed his hope that the sentencing judge
"kind of underst[oo]d everything a little better now," so that "the next person in
my [s]ituation gets a fair chance," and (ii) apologized for his failure to surrender
on his report date, acknowledging that this was "not [j]ustif[ied]" and a "very
stupid" course of action.  (Petitioner's 8/19/2013 Reply, Ex. N, 11/18/2008 Letter
at 12.)  Nor does it appear from the record that Petitioner otherwise sought the
court's intervention, at any time from his sentencing in July of 2006 until mid-
2012, in obtaining these items from his counsel or the court files.  If not for the
efforts of Petitioner's attorney in the failure-to-report case, it is not clear when (or

19

whether) Petitioner might have gained access to these materials.[7]

Petitioner's sporadic attempts over several years to investigate alleged illegalities in his sentence do not qualify as the "exercise of due diligence" within the meaning of § 2255(f)(4). These efforts undoubtedly were impeded by Petitioner's status as a fugitive for over 18 months after his sentencing.[8] Even after he was apprehended and began serving his sentence, Petitioner embarked upon what could only be termed a leisurely pursuit of additional evidence in support of his eventual challenge to his conviction and sentence, waiting nearly five more years before filing his present motion. As observed earlier, there is no "statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim." *Flanagan,* 154 F.3d at 199. Rather, once Petitioner determined, almost immediately after the

---

[7]Because Petitioner's attorney in the failure-to-report case is not representing him in this case, counsel was under no obligation to assist Petitioner in filing his § 2255 motion, nor does counsel's diligence count toward the due diligence expected of Petitioner himself under § 2255(f)(4).

[8]Notably, Petitioner states that in early 2007, he obtained a printout of certain state court records bearing upon his criminal history and mailed a copy to the sentencing court "without a return address." (Petitioner's 8/19/2013 Reply, Ex. O, Aff. at 3-4 & n.4.) Presumably, Petitioner wished to avoid divulging his location to the court, since an arrest warrant had been issued following his failure to surrender to the Bureau of Prisons to serve his sentence. Given this predicament, it would have been difficult for Petitioner to file a § 2255 motion or otherwise seek relief or assistance from the court while he remained a fugitive.

sentencing court entered its judgment in July of 2006, that something seemingly was amiss in his sentence, he was obligated at that time to exercise due diligence in uncovering facts in support of any claims he wished to assert under § 2255. As explained, the various excuses interposed by Petitioner — *e.g.,* his lack of understanding of the law, his efforts to obtain more complete evidentiary support for his claims, and his sentencing counsel's lack of assistance and cooperation — did not relieve him of the obligation to exercise the due diligence demanded under § 2255(f)(4) in order to secure an additional one-year period for challenging a conviction or sentence. Accordingly, because Petitioner has failed to demonstrate that he exercised the required diligence in seeking factual support for his claims, he is not entitled to the benefit of an additional one-year period of limitation from the date that he allegedly secured this factual support.

**B.     Petitioner Has Not Established His Entitlement to Equitable Tolling of the Usual One-Year Period for Seeking Relief Under § 2255.**

Apart from the provisions in § 2255(f) establishing four potential dates upon which the statutory one-year period of limitation begins to run, the Sixth Circuit has recognized that "[t]he one-year statute of limitations for filing a § 2255 petition is subject to equitable tolling." *Johnson v. United States,* No. 09-1556, 457 F. App'x 462, 469 (6th Cir. Jan. 23, 2012); *see also Jefferson,* 730 F.3d at

549.  Petitioner "bears the burden of demonstrating he is entitled to equitable tolling," *Johnson,* 457 F. App'x at 469, and the Sixth Circuit has cautioned that courts should "grant equitable tolling sparingly," *Hall,* 662 F.3d at 749 (internal quotation marks and citation omitted).  To meet his burden, Petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Jefferson,* 730 F.3d at 549 (internal quotation marks and citation omitted).

Turning to the first prong of this inquiry, it readily follows from the Court's foregoing discussion that Petitioner cannot establish that he pursued his rights diligently before filing his present motion.  Indeed, the Court already has determined that Petitioner did not exercise the requisite diligence to trigger the additional one-year filing period for a § 2255 petition supported by newly discovered facts, and "it would be inappropriate for the judiciary" to apply equitable tolling in a manner that "would amount to little more than a disagreement with the way Congress wrote" § 2255(f)(4).  *Owens,* 235 F.3d at 360.

Moreover, a number of courts have found that equitable tolling is unavailable where, as here, a criminal defendant's delayed filing is attributable in part to the defendant's "own flight as a fugitive from justice from the jurisdiction."

*Rahat v. Higgins,* No. 05-6166, 159 F. App'x 13, 15 (10th Cir. Dec. 12, 2005); *see also Garcia v. United States,* No. 06-0994, 268 F. App'x 20, 22 (2d Cir. Feb. 29, 2008) (finding that the petitioner "failed to exercise due diligence," and that "it was [his] fugitive status that kept him from doing so"); *United States v. Ladner,* No. 05-98, 2012 WL 831946, at *2 (E.D. Pa. March 12, 2012) (finding that the defendant had not "diligently pursued his rights" where he "was a fugitive who attempted to evade his sentence," and where even "after his capture, [he] waited over twenty months to file [his] § 2255 Motion"); *Sain v. United States,* No. 99-00129, 2006 WL 1050063, at *1 (E.D. Ark. April 20, 2006) (explaining that "Petitioner's failure to timely file his habeas petition was due entirely to his choice to become a fugitive").  This reasoning is fully applicable here, given that Petitioner remained a fugitive for the entire one-year period ordinarily available for filing a § 2255 motion, and that even after he was apprehended in April of 2008, Petitioner waited nearly five more years before filing the present motion, including an additional eight- or nine-month delay once he purportedly uncovered the final factual support for his claims in June or July of 2012.  This course of conduct is the antithesis of diligent pursuit of one's rights.

Nor has Petitioner identified any "extraordinary circumstance" that "stood in his way and prevented timely filing" of his § 2255 motion.  *Jefferson,* 730 F.3d

at 549.  The only circumstance outside of Petitioner's control that arguably

impeded the filing of his motion was his sentencing counsel's alleged lack of

cooperation in providing the case materials requested by Petitioner.  As observed

earlier, however, Petitioner did not seek the court's assistance in obtaining these

materials — and, in fact, he tied his own hands in requesting such assistance by

failing to surrender himself for service of his sentence.  Accordingly, even

assuming that Petitioner could have prepared and filed his present motion more

promptly if his sentencing counsel had cooperated with his requests for

information, this hardly accounts for the six-and-a-half-year lapse between

Petitioner's sentencing in July of 2006 and the filing of his § 2255 petition.  It

follows that Petitioner has not established either prong of the two-part standard for

invoking equitable tolling to excuse his untimely filing.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Respondent's

motion to dismiss Petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside,

or correct his sentence (docket #390) is GRANTED.  In light of this ruling, IT IS

FURTHER ORDERED that Petitioner's motion under 28 U.S.C. § 2255 to vacate,

set aside, or correct his sentence (docket #373) is DISMISSED as untimely filed

outside the one-year period of limitation set forth in § 2255(f).  IT IS FURTHER

ORDERED that Petitioner's motion for removal of untrue statements and request

for case status update (docket #417) is DENIED AS MOOT.

Finally, in the event that Petitioner might seek to appeal any of the Court's

rulings in the present opinion and order, the Court finds that a certificate of

appealability should be DENIED as to each of the claims asserted in Petitioner's §

2255 motion and as to the Court's determination that this motion was not timely

filed, where Petitioner has failed to make a substantial showing of the denial of a

constitutional right.


s/Gerald E. Rosen
United States District Judge

Dated:  September 8, 2016

I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on September 8, 2016, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager, (313) 234-5135

25